UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| ELIDA RIVAS and DELIA GUTIERREZ *Plaintiffs*, v. SALDIVAR & ASSOCIATES, INC. *et al.*, *Defendants* | Case No: 1:16-cv-343-LMB-JFA Hearing Date: July 22, 2016 10:00 a.m. |

**Memorandum In Support of Plaintiffs' Motion for Default Judgment**

Under Rule 55 of the Federal Rules of Civil Procedure, if a defendant fails to plead or otherwise respond to a lawsuit against him, the plaintiff may seek a default judgment. Plaintiffs Elida Rivas and Delia Gutierrez served Defendants Saldivar & Associates, Inc. (d/b/a R&R Catering), Robert P. Saldivar, Michelle Bloxton, and Manuel Chavez with a complaint for unpaid minimum wages and overtime under the federal Fair Labor Standards Act, and for breach of their employment contracts under Virginia law based on their failure to pay wages. Defendants did not file any responsive pleading by the Court's June 15 deadline, and they are now in default. For the following reasons, Plaintiffs now move the Court for a default judgment in their favor because:

- This Court has subject-matter jurisdiction over the claims pled in the complaint, and personal jurisdiction over Defendants themselves;

1

- Defendants were properly served;

- The complaint alleges facts establishing all necessary elements of Plaintiffs' claims; and

- The complaint alleges facts establishing the amount of damages Plaintiffs are owed, as well as Defendants' joint and several liability for the portion of those damages arising under the Fair Labor Standards Act.

## Argument

### I.  The Court has jurisdiction to render a default judgment in this case.

For a court to render a default judgment, it must have both subject-matter jurisdiction over the Plaintiff's claims and personal jurisdiction over the defaulting party. *Dutan v. Sheet Metal Remodeling, LLC*, 48 F. Supp. 3d 860, 866 (E.D. Va. 2014). Both are satisfied here.

### A.  The Court has subject-matter jurisdiction over Plaintiffs' claims.

Plaintiffs' claims for unpaid minimum wages and overtime arise under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, a federal statute. *See* Complaint, ECF No. 1 at ¶¶81–86. District courts have original subject-matter jurisdiction over all civil actions arising under federal statutes. 28 U.S.C. § 1331. The FLSA also specifically authorizes workers to file private lawsuits to enforce the law's minimum-wage and overtime provisions in federal court. 29 U.S.C. § 216(b). Thus, the Court has subject-matter jurisdiction over Plaintiff's FLSA claims.

The court also has supplemental jurisdiction of Plaintiffs' breach-of-contract claims for failure to pay wages, arising under Virginia law. District courts have supplemental jurisdiction over a Plaintiff's state-law claims if they are so related to the federal-law claims as to form part of the same case or controversy. 28 U.S.C. § 1367(a). Here, both the federal FLSA claims and the state-law contract claims are predicated on the same conduct: Defendants' failure to properly

pay Plaintiffs' wages for the hours that they worked. Thus, the state-law claims arise out of the same nucleus of operative fact as the federal claims, forming part of the same case or controversy, and the Court has supplemental jurisdiction over these claims. *See Dutan*, 48 F. Supp. 3d at 866.

Thus, the court has jurisdiction over all of the claims in the the complaint.

**B. The Court has personal jurisdiction over the Defendants.**

This Court also has personal jurisdiction over the Defendants. For a federal court to have personal jurisdiction over a defendant, the defendant must be subject to the personal jurisdiction or "long-arm" statute of the state in which the federal court sits. Exercise of personal jurisdiction must also satisfy the minimum-contacts test under the Due Process Clause of the Fourteenth Amendment. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The same facts satisfy both of these jurisdictional requirements. Virginia's personal-jurisdiction statute authorizes jurisdiction over anyone who transacts business in Virginia, contracts to supply goods or services in Virginia, or who possesses any real property in Virginia, among other things. *See* Va. Code § 8.01-328.1. The Due Process Clause authorizes jurisdiction over anyone who resides in the forum state, or any non-resident who has some contact with the forum state such that it is fair for the defendant to be haled into court there. *See Int'l Shoe*, 326 U.S. at 316. Here, the corporate defendant is headquartered in Springfield, Virginia. (Compl. at ¶3; Exh. A, Annual Reports of Saldivar & Assoc's, Inc., 2010–2016 (("Annual Reports")). Plaintiffs performed their work at Defendants' headquarters facility in Virginia. (Compl. at ¶¶10 and 15; Exh. B, Declaration of Defendant Elida Rivas (("Rivas Decl.")) at ¶¶3 and 6; Exh. C., Declaration of Delia Gutierrez (("Gutierrez Decl.")) at ¶¶3 and 6). Defendants' culpable acts and omissions occurred at Defendants' headquarters facility in Virginia. (*See* Compl. at ¶¶10, 15, and

29–55). And Defendants contracted to supply goods and catering services to events in Virginia. (*See* Compl. at ¶8; Rivas Decl. at 6; Gutierrez Decl. at ¶6).

These contacts satisfy both Virginia's jurisdictional statute and the Constitution, and thus the Court has personal jurisdiction over the Defendants.

### C. Venue is proper in this judicial district.

Venue is proper in this judicial district because the corporate Defendant is headquartered in this district and because the acts and omissions giving rise to the complaint occurred in this district.

## II.  The Defendants were properly served and have failed to respond.

After filing the complaint on March 29, 2016, (ECF No. 1), Plaintiffs requested that Defendants waive the service of summonses in accordance with Fed R. Civ. P. 4(d). (ECF No. 2). Defendants never returned the waiver-of-service forms, and so the Clerk issued summonses for all four Defendants. (See ECF No. 3). Plaintiffs then served the summonses, along with copies of the complaint, via private process server. (*See* Affidavits of Service, ECF Nos. 4–7); Fed. R. Civ. P. 4(c)(1)–(2). The process server served the individual Defendants personally, in accordance with Fed. R. Civ. P. 4(e)(2)(A). (Affidavits of Service, ECF Nos. 4, 5, and 7). The process server served the corporate defendant by delivering the summons and complaint to the corporation's registered agent, Defendant Robert P. Saldivar, in accordance with Fed. R. Civ. P. 4(h)(1)(B). (ECF No. 6).

After being served with process, Defendants then had 21 days to respond. Fed. R. Civ. P. 12(a). When Defendants failed to respond, Plaintiffs requested an entry of default against all four Defendants, (ECF No. 8), which the Clerk entered on June 20, 2016 (ECF No. 10).

Thus, all four Defendants were properly served.

4

**III. Plaintiffs allege facts sufficient to establish each element of their FLSA claims, as well as Defendants' joint liability for those claims.**

As demonstrated below, Plaintiffs have alleged facts in their complaint sufficient to establish each element of their FLSA claims for unpaid overtime and minimum wages. They have also alleged facts sufficient to support the Defendants' joint and several liability for those claims. Because Defendants have opted not to respond, all of the factual allegations in Plaintiffs' complaint are deemed admitted. *Dutan*, 48 F. Supp. 3d at 865–66, citing Fed. R. Civ. P. 8(b)(6).

**A.  Count 1: Willful Failure to Pay FLSA Overtime Compensation**

To establish a FLSA violation for non-payment of overtime, a plaintiff must show that:

- **She was employed by the defendant;**
- **She was engaged in commerce, or in the production of goods for commerce;**
- **She was not exempt from overtime under 29 U.S.C. § 213; and**
- **She worked over 40 hours per workweek and was not compensated at a rate of 1.5 times her regular rate for each hour she worked beyond 40 in any given workweek.**

*See* 29 U.S.C. § 207; *Dutan*, 48 F. Supp. 3d at 868.

**1.  Defendants jointly "employed" the Plaintiffs under the FLSA.**

**a.  Plaintiffs were FLSA "employees."**

The FLSA's minimum-wage and overtime requirements apply to "employees." 29 U.S.C. §§ 206–207. Under the FLSA, the word "employ" includes "to suffer or permit to work," *id.* at § 203(g), which then-Senator Hugo Black approvingly called "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945), *quoting* 81 Cong. Rec. 7657.[1] "To determine whether a worker is an employee under the FLSA,

---

[1] The FLSA also purports to define "employer" and "employee," but its definitions are circular and unhelpful: an "employer" includes anyone acting "in the interest of an employer in relation

5

courts look to the 'economic realities' of the relationship between the worker and the putative employer.'" *McFeeley v. Jackson Street Entertainment, LLC*, __ F.3d __, No. 15-1583, 2016 WL 3191896 (4th Cir., June 8, 2016), *quoting Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006). "The touchstone of the 'economic realities' test is whether the worker is 'economically dependent on the business…or is, as a matter of economic [reality], in business for himself." *Id.* (alteration in original). Courts to consider the issue have examined such factors as

> (1) the degree of control that the putative employer has over the manner in which the work is  performed;
> (2) the worker's opportunities for profit or loss dependent on his managerial skill;
> (3) the worker's investment in equipment or material, or his employment of other workers;
> (4) the degree of skill required for the work;
> (5) the permanence of the working relationship; and
> (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Schultz*, 466 F.3d at 304–05. Ultimately, however the determination does not depend on isolated factors, "but rather upon the circumstances of the whole activity.*" Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). Nonetheless, a brief discussion of the factors is helpful to show that Plaintiffs were decidedly Defendants' "employees."

The first factor—the degree of control that Defendants had over the manner in which Plaintiffs performed their work—favors Plaintiffs' contention that they were employees. Each day, Defendants assigned Plaintiffs the list of foods they were to prepare that day. (Compl. at ¶24; Rivas Decl. at ¶15; Gutierrez Decl. at ¶15). Defendants assigned Plaintiffs their daily tasks

---

to an employee," and an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(d) and (e).

on a day-by-day and hour-by-hour basis, and supervised their work. (Compl. at ¶23; Rivas Decl. at 14; Gutierrez Decl. at ¶14). Defendants set Plaintiffs' work hours, which varied significantly from day to day. (Compl. at ¶¶17 and 23; Rivas Decl. at ¶¶8 and 14; Gutierrez Decl. at ¶¶8 and 14). And Defendants had the power to discipline workers and fire workers, including Plaintiffs. (Compl. at ¶¶25–26; Rivas Decl. at ¶¶15–16; Gutierrez Decl. at ¶¶15–16). Given this degree of control, Defendants should be deemed Plaintiffs' "employers" under the FLSA.

Turning to the second factor, Plaintiffs had no opportunities for profit or loss dependent on their managerial skill. They were paid a regular hourly wage for their work; they received no commission or bonus, for example, based on the number of food platters they prepared each day. (*See* Compl. at ¶14; Rivas Decl. at ¶7; Gutierrez Decl. at ¶7). This factor favors Plaintiffs.

With regard to the third factor, Plaintiffs did not have a particularly high investment in equipment or material. Defendants provided the facilities and all of the foods necessary for Plaintiffs to prepare the catering platters. Nor did Plaintifffs employ other workers; while Plaintiff Gutierrez did briefly supervise three new cold-kitchen workers near the end of her employment with the company, she did not "employ" them under the FLSA. (*See* Complaint at ¶74; Gutierrez Decl. at ¶55). There were no other experienced cold-kitchen workers left by the time these new workers arrived, and so it fell to her to show them the ropes. *Id.* There was no conversation with R&R management about any change in her job duties, and she received no extra compensation for her work; she simply did it out of necessity. *Id.* Defendants were the ones who hired these three workers, set their schedules, established their pay rates, and retained the sole power to fire or otherwise discipline them. *Id.* Thus, this factor likewise favors Plaintiffs.

7

As for the fourth factor, while preparing cold-food catering platters requires a degree of consistency and attention to detail, it cannot be reasonably deemed anything other than low-skilled labor. Thus, this factor favors Plaintiffs as well.

The fifth factor considers the permanence of the working relationship; Plaintiffs held no other employment during the years that they worked in Defendants' employ. (Rivas Decl. at ¶63; Gutierrez Decl. at ¶62). Thus, this factor also favors Plaintiffs.

Sixth, and finally, the Plaintiffs' work was an integral part of Defendants' business: Defendants are a catering company, and Plaintiffs worked to prepare cold foods that Defendants served at their catered events. (Compl. at ¶¶8 and 15; Rivas Decl. at ¶6; Gutierrez Decl. at ¶6). Thus, this factor favors Plaintiffs as well.

Taking these factors into account, and in considering the circumstances of the whole activity, Plaintiffs respectfully ask that the Court find that Plaintiffs were Defendants' "employees" under the Fair Labor Standards Act.

### b. The individual defendants were all Plaintiffs' joint "employers."

Having established that Plaintiffs were FLSA "employees," the second question is: whose employees? Fortunately, the law is clear that individuals as well as corporations can be held jointly and severally liable as "employers" under the FLSA. *Zegarra v. Marco Polo, Inc.*, No. 1:08-cv-891-JCC, 2009 WL 143428, at *2 (E.D. Va. Jan. 21, 2009). As Judge Cacheris has observed, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id*. Each putative employer "need not have control over all aspects of the work of the laborers" to be an "employer" under the FLSA. *Howard v. Malcolm*, 852 F.2d 101, 105 (4th Cir. 1988). Rather, if the facts show that that

"employment by one employer is not completely disassociated from employment by the other employer(s)," a joint-employment situation exists, and all of the employee's work for all of the joint employers during the workweek is considered "*one employment* for purposes of the [FLSA]." *Schultz*, 466 F.3d at 305 (emphasis and alteration in original), *quoting* 29 C.F.R. § 791.2(a). Here, the facts show that the individual Defendants jointly employed Plaintiffs under the Act.

Defendant Manuel Chavez worked as the executive chef of R&R Catering from late 2013 or early 2014 until the end of Plaintiffs' tenure at R&R. (Compl. at ¶21). He was put in charge of both the hot and cold kitchens, as well as the company's deliveries and inventory. (Compl. at ¶23; Rivas Decl. at ¶13; Gutierrez Decl. at ¶13). As the cold-kitchen supervisor, Defendant Chavez set Plaintiffs' work schedules each week, assigned them their daily tasks on a day-by-day and hour-by-hour basis, and supervised their work. (Compl. at ¶23; Rivas Decl. at 14; Gutierrez Decl. at 14). He had the power to discipline and fire Plaintiffs and their co-workers in the cold kitchen. (*See* Compl. at ¶¶25–26; Rivas Decl. at ¶¶16–17; Gutierrez Decl. at ¶¶16–17). He required cold-kitchen workers, including Plaintiffs, to buy company uniforms from him. (Compl. at ¶27; Rivas Decl. at ¶19; Gutierrez Decl. at ¶19). And he regularly required Plaintiffs to work off-the-clock during their lunch breaks. (Compl. at ¶36(b); Rivas Decl. at ¶29; Gutierrez Decl. at ¶30). As a supervisor with such a high degree of control over Plaintiffs' work at R&R, then, Manuel Chavez was plainly one of their "employers" under the Fair Labor Standards Act.

Defendants Robert P. Saldivar and Michelle Bloxton, although not involved in Plaintiffs' day-to-day supervision, also "employed" Plaintiffs under the FLSA's broad definition. *See Schultz*, 466 F.3d at 305 ("Although control is an important part of the [joint employer] test, the issue is not the degree of control that an alleged employer has over the manner in which the work

9

is performed in comparison to that of *another employer.* Rather, it is the degree of control that the alleged employer has in comparison to the control exerted by the *worker.*") While Plaintiffs acknowledge that they do not know what these two defendants' precise jub duties were (Rivas Decl. at ¶¶21–22; Gutierrez Decl. at ¶¶21–22), this is primarily due to Defendants' failure to respond to this lawsuit or participate in discovery—failings for which Plaintiffs should not be punished.[2] In any case, the information that Plaintiffs do have is sufficient to hold both of these individual Defendants liable as "employers" under the FLSA.

Defendant Robert Saldivar is R&R Catering's president and treasurer. (*See* Exh. A, Annual Reports). He is also a co-owner of the company with Michelle Bloxton. (*See* Compl. at ¶6; Rivas Decl. at ¶21; Gutierrez Decl. at ¶21). Moreover, Defendant Saldivar also intervened directly in Plaintiffs' wage dispute. When Plaintiffs stopped working for a few days in early 2015, Defendant Saldivar held a meeting with them on the company premises in which he urged them not to quit and told them that they would be paid their back wages. (Compl. at ¶42; Rivas Decl. at ¶39). He held another such meeting that summer when the problems continued unabated. (*Id.* at ¶¶58–59). Thus, he was unquestionably on notice about the obvious and glaring wage violations regarding Plaintiffs' pay. And as company president, he was in a position to remedy those problems. Thus, he should be deemed a joint employer under the FLSA. *See Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) (though not responsible for plaintiff workers' day-to-day supervision, defendants were FLSA joint employers where *inter alia*, they intervened to resolve employment problems).

---

[2] *See Dutan*, 48 F. Supp. 3d at 868 n.5 (although FLSA coverage question was "a close call," the court erred on the side of allowing the FLSA case to proceed where the defendant had not appeared in the case to contest the issue).

During Plaintiffs' tenure at R&R, Defendant Bloxton was the company's vice-president and secretary. *See* Exh. A, Annual Reports. During that time, Defendant Bloxton regularly solicited clients and entered into catering contracts on behalf of the company. (Rivas Decl. at ¶22; Gutierrez Decl. at ¶22). Defendant Bloxton regularly invited potential catering clients to the company's headquarters to try samples of the foods that R&R could prepare for catering events, included cold foods that R&R's cold-kitchen workers, including Plaintiffs, had prepared. (Gutierrez Decl. at ¶23). Moreover, on multiple occasions when Plaintiff Gutierrez complained to Defendant Manuel Chavez about her pay problems, Chavez would state that he was going to call Defendant Bloxton and see if anything could be done to solve the problem. (*See* Gutierrez Decl. at ¶35). And when Plaintiffs stopped working for a few days in early 2015 out of frustration with their pay problems, Defendant Bloxton reached out to Plaintiff Gutierrez and urged her to return to work at the company. (Compl. at ¶43; Gutierrez Decl. at ¶40). When Plaintiffs returned to work after this few-days' work-stoppage, Defendant Bloxton met with Plaintiffs three times in Defendant Chavez's office to make payments toward Plaintiffs' back wages. (*See* Rivas Decl. at ¶¶39–42; Gutierrez Decl. 41–44¶¶). Thus, because of her position of authority in the business, as well as her awareness of and ability to remedy Plaintiffs' pay problems, Defendant Bloxton should also be deemed a joint "employer" under the FLSA.

### 2. The Plaintiffs were engaged in "commerce" or the "production of goods for commerce".

The FLSA's minimum-wage and overtime requirements apply to employees engaged in "commerce," "the production of goods for commerce," or who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206–207. Under the FLSA, "commerce" means essentially "interstate commerce." *See id.* at § 203(b). Workers are engaged in "the production of goods for commerce" if the employee "works directly

on or handles goods which flow into interstate commerce either immediately or eventually."
*Wirtz v. Modern Trashmoval, Inc.*, 323 F.2d 451, 457 (4th Cir. 1963). Here, Plaintiffs' job was to
prepare food and other products that Defendants would then serve at its events in Virginia and
the District of Columbia. (*See* Compl. at ¶¶15–16; Rivas Decl. at ¶6; Gutierrez Decl. at ¶6). The
business may also have grossed over $500,000 in annual revenue. (*See* Compl. at ¶8).[3] Thus,
Plaintiffs were engaged in commerce or the production of goods for commerce under the FLSA.

### 3. The Plaintiffs were not exempt from overtime.

The FLSA exempts certain narrow classes of employees from its overtime pay
requirements. *See* 29 U.S.C. § 213. But none of these exemptions applies to catering-company
workers who do the kinds of things that Plaintiffs did: preparing cold foods for catered events.
(*See* Compl. at ¶15; Rivas Decl. at ¶6; Gutierrez Decl. at ¶6). And Defendants have introduced
no evidence showing that an FLSA exemption applies. *See Darveau v. Detecon, Inc.*, 515 F.3d
334, 337 (4th Cir. 2008) (employer bears the burden of proving that an employee's job is
exempt). Therefore, the Plaintiffs were not exempt from the FLSA based on the type of work
they performed.

### 4. The Plaintiff worked over 40 hours each week without being paid time-and-a-half for her hours worked beyond 40 in any given week.

Plaintiff Rivas worked as a regular employee at R&R Catering from approximately April
2011 to July 17, 2015. (Compl. ¶12; Rivas Decl. at ¶2). Plaintiff Gutierrez worked as a regular
employee at R&R Catering from approximately March 2015 to December 4, 2015. (Compl. ¶13;

---

[3] On the posture of a default judgment, Plaintiffs—low-skilled food-preparation workers—cannot be expected to know with certainty their employer's gross volume of business. Again, Defendants have failed to respond to this lawsuit or otherwise participate in discovery that would have shed light on this issue; their failure to do so should not be held against Plaintiffs.

Gutierrez Decl. at ¶2).[4]  Plaintiffs did not have a predictable work schedule. The days they worked each week and the hours they worked each day varied substantially—no two weeks were alike. (Compl. at ¶17; Rivas Decl. at ¶8; Gutierrez Decl. at ¶8). The company used two systems to keep track of Plaintiffs' hours: a mechanized punch-clock system, and a ledger where Plaintiffs would write in their start and stop times by hand. (Compl. at ¶18; Rivas Decl. at ¶9; Gutierrez Decl. at ¶9). Defendants usually (but not always) gave Plaintiffs two "Work Time/Off-Clock Summaries" with each paycheck, showing the worker's time each week as recorded by the punch-clock. (Compl. at ¶36(c); Rivas Decl. at ¶30; Gutierrez Decl. at ¶31). Plaintiffs also kept their own daily, contemporaneous records of their start and stop times. (Compl. at ¶19; Rivas Decl. at ¶10; Gutierrez Decl. at ¶10). Together, these documents give a fair indication of the hours that Plaintiffs worked each week.

Plaintiff Rivas was not paid any overtime wages for the hundreds of hours she worked overtime wages for the many hours of overtime work she performed between March 1–April 30, 2014; November 19, 2014–January 13, 2015; or July 1–17, 2015, as well as various days and hours outside of those periods. (*See* Compl. at ¶36(a)(i); Rivas Decl. at ¶28). Plaintiff Gutierrez was not paid overtime wages for the many hours of work she performed between March 7–April 22, 2014; November 19, 2014–January 13, 2015; or from November 4, 2015–December 1, 2015, as well as various days and hours outside of those periods. (*See* Compl. at ¶36(a)(ii); Gutierrez Decl. at ¶29). Defendants' off-the-clock violations and rounding errors resulted in additional overtime damages in all week that Plaintiffs worked overtime. (*See* Compl. at ¶36(b)–(c); Rivas Decl. at ¶¶29–30; Gutierrez Decl. at ¶¶30–31).

---

[4] Plaintiffs were each first hired as temporary holiday employees for the December prior to the year they were hired as regular employees. (Compl. ¶¶12–13; Rivas Decl. at ¶2; Gutierrez Decl. at ¶2).

Thus, both Plaintiffs have stated unpaid overtime claims under the FLSA.

## B.  Count 2: Willful Failure to Pay FLSA Minimum Wages

To establish a FLSA violation for failure to pay the minimum wage, a plaintiff must show that:

- **She was employed by the defendant;**
- **She was engaged in commerce, or in the production of goods for commerce;**
- **She was not exempt from the minimum wage under 29 U.S.C. § 213; and**
- **She was not paid at least the minimum wage for every hour she worked in any given workweek.**

*See* 29 U.S.C. § 206; *Dutan*, 48 F. Supp. 3d at 868.

As shown above in the discussion of Plaintiffs' overtime claims, elements 1–3 are readily satisfied. The fourth element is also met: the federal minimum wage is $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Here, Defendants sometimes paid Plaintiffs no wages at all, for periods ranging from as short as a day to as long as multiple weeks. (*See* Compl. at ¶36(a)(i)–(ii); Rivas Decl. at ¶28; Gutierrez Decl. at ¶29). Thus, both Plaintiffs have stated claims for unpaid minimum wages under the FLSA.

## IV. Plaintiffs allege facts sufficient to support their Virginia breach-of-contract claims.

Plaintiffs have alleged facts sufficient to support their state-law breach-of-contract claims against the corporate Defendant, Saldivar & Associates, Inc. ("R&R") Each Plaintiff reached an agreement with the company whereby the Plaintiff would perform food-preparation work for the company in exchange for an hourly wage. (Complaint at ¶87; Rivas Decl. at ¶¶6–7; Gutierrez Decl. at ¶¶6–7). Employment contracts were thus formed under Virginia law. Plaintiffs performed under the contract for periods of several years each. (*See* Compl. at ¶12; Rivas Decl. at ¶2; Gutierrez Decl. at ¶2). R&R failed to compensate Plaintiffs for all the work they

performed under the contract, in amounts ranging from isolated hours to entire weeks, breaching the contract. (*See* Compl. ¶36; Rivas Decl. ¶¶28–30; Gutierrez Decl. ¶¶29–31). As a result of R&R's breach, Plaintiffs suffered damages—the difference between how much R&R promised to pay them and how much it actually paid them. Thus, Plaintiffs each have a claim for damages under Virginia contract law.

**V.  Plaintiffs allege facts sufficient to establish the amount of their damages.**

    **A.  Plaintiffs may use their own records, as well as other reasonable inferences, to prove the amount of their damages.**

Due to the myriad problems with Defendants' pay practices, together with their failure to provide Plaintiffs with any discovery, the full measure of Plaintiffs' damages may never be known. Nonetheless, Plaintiffs have the tools available to make a good-faith and reasonable estimate of the harm they suffered: Defendants' Work Time/Off-Clock Summaries," (*See* Compl. at ¶36(c); Rivas Decl. at ¶30; Gutierrez Decl. at ¶31), and Plaintiffs' own daily, contemporaneous records of their start and stop times, as well as their wages not paid. (Compl. at ¶19; Rivas Decl. at ¶10; Gutierrez Decl. at ¶10). *See also Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (where an employer has produced no employment records, a worker may nonetheless meet the burden of proof if she produces sufficient evidence to show the amount and extent of her work "as a matter of just and reasonable inference."

    **B. Measure of Damages — Unpaid Wages and Overtime**

For any hour that a Plaintiff worked without pay, she is entitled to the minimum wage and an additional equal amount as liquidated damages under the FLSA, 29 U.S.C. § 216(b); she is also entitled to her hourly rate under Virginia contract law. For any hour that a Plaintiff

worked over 40 in a given workweek without pay, she is entitled to one-and-a-half times her regular rate of pay and an additional equal amount as liquidated damages under the FLSA. *Id.*

The spreadsheets filed with this motion as Exhibits B-4 and C-3 explain each Plaintiff's unpaid wage calculations. For each workweek at issue, the spreadsheets state:

(1) The workweek in which wages are owed;

(2) The unpaid regular and overtime hours Plaintiff worked in that workweek;

    a. Where possible, Plaintiffs used the "Work Time/Off-Clock Summaries" they received with their paychecks (*See* Complaint at ¶32) as the starting point for calculating their hours. For those weeks for which Plaintiffs do not have Summaries, they based their work hours on their own daily, contemporaneous records. (*See* Complaint ¶19).[5]

    b. Plaintiffs then subtracted 0.5 hours for each day that they worked during that workweek, representing their unpaid lunch break. (*See* Complaint ¶17). (E.g., if Plaintiffs worked 5 days that week, they subtracted 2.5 hours from that week's total hours).

    c. Plaintiffs then added 0.5 hours to the total for each workweek, as an approximation of the time they were made to work off-the-clock. (*See* Complaint ¶36(b).

(3) Plaintiff's regular pay rate for that week;

(4) The FLSA minimum wage;

(5) The FLSA overtime wage;

(6) Plaintiff's actual FLSA damages; and

(7) Plaintiff's contract damages.

The limitations period for these violations is three years. The FLSA provides a statute of limitations of two years, unless the claim arises from a "willful" violation, in which case a three-year limitations period applies. 29 U.S.C. § 255(a). A violation is willful if the employer either

---

[5] *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

knew or showed reckless disregard for whether its conduct violated the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 358 (4th Cir. 2011). Here, Defendants knew or should have known that its conduct violated the FLSA. Plaintiffs complained to Defendants about their wage violations frequently, threatened to quit over the violations several times, and received documents from Defendants admitting the unpaid wage violations. Under these circumstances, a three-year limitations period is appropriate.

Based on this spreadsheet, Plaintiffs seek the following damages for these violations:

- Elida Rivas:

  - $7,634.70 in unpaid minimum wages and overtime under the FLSA, jointly and severally against all Defendants.

  - An additional equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b), or $7,634.70, jointly and severally against all Defendants.[6]

  - In the alternative, contract damages of $8,667.20, against Defendant Saldivar & Associates, Inc. only.

- Delia Gutierrez

  - $6,584.70 in unpaid minimum wages and overtime under the FLSA, jointly and severally against all Defendants.

  - An additional equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b), or $6,584.70, jointly and severally against all Defendants.

---

[6] The FLSA also permits the Court to award additional liquidated damages in an amount equal to the unpaid compensation. 29 U.S.C. § 216(b). While the decision to award such damages rests in the Court's sound discretion, the Fourth Circuit has noted that the FLSA "plainly envisions" the award of liquidated damages as "the norm" for plaintiffs who prevail. *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir.1997).

   ○ In the alternative, contract damages of $7,461.90, against Defendant Saldivar & Associates, Inc. only.

## C. Measure of Damages — Rounding Errors

Defendants' records show that they calculated Plaintiffs' hours incorrectly by treating certain minutes that Plaintiff worked as mere 1/100ths of an hour, rather than 1/60ths. (For example, treating "74 minutes" as 0.7 hours rather than 1.23 hours.) (*See* Complaint at ¶36(c). Plaintiffs estimate the damages from these errors on the following assumptions:

- A two-year statute of limitations applies, as the violation was likely negligent rather than willful.

- Plaintiffs' damages amount to about 0.5 hours per pay period—half the time, the rounding error shorted her pay between 0 hours and 0.5 hours, and half the time it shorted her pay between 0.5 hours and 1 hours.

- Plaintiffs' average wage rate over the course of their employment with R&R was $10 per hour: $9 at first, then raised to $11.

Plaintiff Elida Rivas worked at R&R for about 68 weeks during the two-year limitations period, or 34 pay periods. (34 pay periods) × 0.5 hours per pay period = 17 hours in unpaid rounding errors. Assuming that these 17 hours are subject to the FLSA minimum wage: (17 hours) × ($7.25 / hour) = $123.25, plus an additional equal amount as liquidated damages = $246.50. Accordingly, Plaintiff Rivas seeks an award of $246.50 under the FLSA, jointly and severally against all Defendants, for these rounding-error violations. In the alternative, she seeks her contract damages for these 17 hours, at her average contract rate of $10 per hour, or $170 in contract damages, against Defendant Saldivar & Associates, Inc. only.

Plaintiff Delia Gutierrez worked for R&R for about 88 weeks during the two-year limitations period, or 44 pay periods.  (44 pay periods) × 0.5 hours per pay period = 22 hours in

unpaid rounding errors. Assuming that these 22 hours are subject to the FLSA minimum wage: (22 hours) × ($7.25 / hour) = $159.50 in FLSA minimum wage damages, plus an additional equal amount as liquidated damages = $319. Accordingly, Plaintiff Gutierrez seeks an award of $319 under the FLSA, jointly and severally against all Defendants, for these rounding-error violations. In the alternative, she seeks her contract damages for these 22 hours, at her average contract rate of $10 per hour, or $220 in contract damages, against Defendant Saldivar & Associates, Inc. only.

## VI. Total Relief Requested

For the foregoing reasons, Plaintiffs respectfully request the following relief:

1. To Plaintiff Elida Rivas: an award of $15,515.90 under the Fair Labor Standards Act, jointly and severally against all Defendants. In the alternative, an award of $8,837.20 under Virginia contract law, against Defendant Saldivar & Associates, Inc. only.

2. To Plaintiff Delia Gutierrez: an award of $13,488.40 under the Fair Labor Standards Act, jointly and severally against all Defendants. In the alternativfe, an award of $7,681.90 under Virginia contract law, against Defendant Saldivar & Associates, Inc. only.

3. Plaintiffs' attorney's fees and costs as the prevailing party, pursuant to 29 U.S.C. § 216(b).

4. Any other relief the Court thinks just and proper.

Respectfully submitted,

/s/ Nicholas Cooper Marritz

Nicholas Cooper Marritz (VSB #89795)
Simon Y. Sandoval-Moshenberg (VSB #77110)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5607
Fax: (703) 778-3454
nicholas@justice4all.org

**Certificate of Service**

I, Nicholas Marritz, counsel for Plaintiffs, hereby certify that on July 8, 2016, I served Defendants with the foregoing *Memorandum in Support of Default Judgment* via U.S. Mail, at the following addresses:

| DEFENDANT | ADDRESS 1 | ADDRESS 2 | ADDRESS 3 |
|---|---|---|---|
| **Saldivar & Associates Inc.** d/b/a R&R Catering Robert P. Saldivar, Registered Agent | 8004-A Alban Rd. Springfield, Va. 22150 | 7956 Cameron Brown Ct. Springfield, Va. 22153 | 8721 Bitterooot Ct. Lorton, Va. 22079 |
| **Robert P. Saldivar** | Saldivar & Associates Inc. d/b/a R&R Catering 8004-A Alban Rd. Springfield, Va. 22150 | Saldivar & Associates Inc. d/b/a R&R Catering 7956 Cameron Brown Ct. Springfield, Va. 22153 | 8721 Bitterooot Ct. Lorton, Va. 22079 |
| **Michelle M. Bloxton** | "Blu 1681" 13188 Marina Way Woodbridge, Va. 22191 | 6564 Manet Ct., Woodbridge, Va. 22193 | |
| **Manuel Chavez** | "Blu 1681" 13188 Marina Way Woodbridge, Va. 22191 | | |

/s/ Nicholas Cooper Marritz          Date: July 8, 2016
Nicholas Cooper Marritz (VSB No. 89795)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5607
Fax: (703) 778-3454
nicholas@justice4all.org
*Counsel for Plaintiffs*