IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

F I L E D

AUG 5 2016

CLERK, U.S. DIST...
ALEXANDRIA...

ELIDA RIVAS, *et al.*,  )
                                 )
          Plaintiffs,  )
                                 )
    v.  )     Civil Action No. 1:16cv0343 (LMB/JFA)
                                 )
SALDIVAR & ASSOCIATES, INC., *et al.*,  )
                                 )
         Defendants.  )
_____)

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiffs' motion for default judgment (Docket no. 12) against defendants Saldivar & Associates, Inc., doing business as R&R Catering ("R&R Catering"), Robert P. Saldivar ("Saldivar"), Michelle M. Bloxton ("Bloxton"), and Manuel Chavez ("Chavez") (collectively the "defendants"). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

### Procedural Background

On March 29, 2016, plaintiffs Elida Rivas ("Rivas") and Delia Gutierrez ("Gutierrez") (collectively the "plaintiffs") filed this complaint alleging that during their employment by defendants, defendants adhered to payroll practices that failed to compensate plaintiffs as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Docket no. 1) ("Compl."). Specifically, plaintiffs allege that defendants failed to compensate them for both regular and overtime hours worked by plaintiffs, failed to pay them for work performed during their half-hour lunch breaks, and failed to correctly calculate the hours plaintiffs worked during

weeks they were paid by defendants. (Compl. ¶¶ 36, 81–86[1]). Plaintiffs also assert a claim for breach of contract against R&R Catering only. (Compl. ¶¶ 87–90). The complaint seeks recovery of unpaid minimum and overtime wages, liquidated damages, attorney's fees, and costs.

On April 4, 2016, plaintiffs' counsel sent waiver-of-service forms to the defendants. (Docket no. 2). Defendants did not respond to the waiver-of-service forms sent to them. Accordingly, on May 9, 2016, plaintiffs' counsel requested that summonses be issued for the defendants. (Id.). On May 9, 2016, summonses were issued for service on Saldivar, Bloxton, and Chavez in their individual capacities and on Saldivar as the registered agent for defendant R&R Catering. (Docket no. 3). On May 14, 2016, Bloxton was personally served with a copy of the summons and complaint. (Docket no. 4). On May 18, 2016, Chavez was personally served with a copy of the summons and complaint. (Docket no. 5). On May 25, 2016, Saldivar was personally served with a copy of the summons and complaint, both in his individual capacity and as the registered agent of R&R Catering. (Docket nos. 6, 7). As discussed more fully below, service of process was proper as to all the defendants. In accordance with Fed. R. Civ. P. 12(a), a responsive pleading was due from Bloxton on June 6, 2016, from Chavez on June 8, 2016, and from Saldivar and R&R Catering on June 15, 2016. The defendants have failed to file an answer or other responsive pleading and the time for doing so has expired.

On June 16, 2016, plaintiffs requested an entry of default against the defendants (Docket no. 8) and filed a declaration from Nicholas Marritz in support of their request (Docket no. 9). The Clerk of Court entered default against the defendants on June 20, 2016. (Docket no. 10).

---

[1] The complaint filed by plaintiffs is incorrectly numbered. The first four paragraphs of the complaint are appropriately labeled "1" through "4." (Docket no. 1 at 1–2). Thereafter, the next paragraph under the heading "PARTIES" begins with paragraph number "2." (Docket no. 1 at 2). The complaint then carries this numbering throughout the rest of the pleading. Thus, there are two paragraphs numbered "2," "3," and "4," in the complaint. Accordingly, this Proposed Findings of Fact and Recommendations refers to the duplicable paragraphs 2, 3, and 4 as "2.1," "3.1," and "4.1." The remainder of the numbered paragraphs in the complaint are cited as they appear in the complaint.

On June 23, 2016, the District Judge entered an order directing plaintiffs to file a motion

for default judgment and an accompanying memorandum and to set a hearing on the motion for

default judgment for Friday, July 22, 2016. (Docket no. 11). A copy of that Order was also sent

to defendants at their last known mailing addresses.

On July 8, 2016, plaintiffs filed a motion for default judgment against defendants (Docket

no. 12), a memorandum in support (Docket no. 13), an exhibit detailing Saldivar & Associates,

Inc.'s Commonwealth of Virginia, State Corporation Commission, Annual Reports from 2010–

2016 (Docket no. 13-1), a declaration of Rivas (Docket no. 13-2) ("Rivas Decl."), exhibits

regarding Rivas's pay and hours worked while employed by defendants (Docket nos. 13-3, 13-4,

13-5, 13-6), a declaration of Gutierrez (Docket no. 13-7), and exhibits regarding Gutierrez's pay

and hours worked while employed by defendants (Docket nos. 13-8, 13-9, 13-10). On July 9,

2016, plaintiffs filed a notice of hearing for their motion for default judgment for July 22, 2016.

(Docket no. 14).

On July 11, 2016, the undersigned entered an order directing plaintiffs to renotice their

motion for default judgment to be heard on another Friday after July 22, 2016. (Docket no. 15).

On July 11, 2016, plaintiffs filed a praecipe regarding their motion for default judgment (Docket

no. 16), an exhibit of Rivas's Work Time/Off-Clock Summaries (Docket no. 16-1), Rivas's

notebooks with contemporaneous recollections of Rivas's work schedule (Docket nos. 16-2, 16-

3), Gutierrez's notebooks with contemporaneous recollections of Gutierrez's work schedule

(Dockets nos. 16-4, 16-5), Gutierrez's Work Time/Off-Clock Summaries (Docket no. 16-6),

Gutierrez's pay stub for pay period June 17, 2015 to June 30, 2015 (Docket no. 16-7), and a copy

of Gutierrez's declaration with a handwritten signature, dated July 11, 2016 (Docket no. 16-8)

("Gutierrez Decl."). Also on July 11, 2016, plaintiffs renoticed their motion for default judgment

3

for a hearing on August 5, 2016. (Docket no. 18). On August 2, 2016, plaintiff filed a second praecipe regarding their motion for default judgment (Docket no. 19) and an amended damages calculation for Rivas (Docket no. 19-1). Defendants were served with copies of the motion for default judgment and memorandum in support by first-class mail on July 8, 2016 (Docket no. 12 at 4; Docket no. 13 at 2) and with the second praecipe by first-class mail on August 2, 2016 (Docket no. 19 at 4). On August 4, 2016, Saldivar delivered a letter to the court on behalf of Saldivar & Associates, Inc., which stated that Saldivar & Associates, Inc.'s attorney was out of the country and not available for the hearing on August 5, 2016 and requested a continuance of the hearing. (Docket no. 20). Plaintiffs' counsel filed an opposition to the request to continue the hearing. (Docket no. 21). Thereafter, the undersigned entered an order denying the request to continue the hearing since no explanation was given for the delay. (Docket no. 22).

On August 5, 2016, counsel for the plaintiffs appeared before the undersigned and Robert P. Saldivar appeared on behalf of himself and Saldivar & Associates, Inc.

### Factual Background

The following facts are established by the complaint filed on March 29, 2016. Defendant Saldivar & Associates, Inc., doing business as R&R Catering ("R&R Catering"), is a Virginia corporation with its principal place of business at 7956 Cameron Brown Court, Springfield, Virginia 22153. (Compl. ¶ 3.1). Defendants Saldivar and Bloxton are both adult residents of Virginia. (Compl. ¶¶ 4.1, 5). Saldivar and Bloxton are owners of R&R Catering. (Compl. ¶ 6). Defendant Chavez's place of residence is unknown; however, he regularly works in Fairfax County and Prince William County in Virginia. (Compl. ¶ 7). At all times relevant to this action, R&R Catering was an enterprise within the meaning of the FLSA; had annual gross volume of sales made or business done in an amount exceeding $500,000; and had employees

4

who were engaged in commerce or handle, sell, or otherwise work on goods or materials that have moved in or were produced in commerce. (Compl. ¶¶ 9, 15, 16, 80). During the relevant time period, Chavez controlled the day-to-day operations of the cold kitchen at R&R Catering where plaintiffs worked; supervised plaintiffs; had the power to hire, fire, suspend, and discipline plaintiffs, including docking their pay or hours; required the plaintiffs to purchase uniforms from him; and provided necessary supplies for plaintiffs. (Compl. ¶¶ 22–28). As well as being an owner and director of R&R Catering, Saldivar was the president and treasurer of R&R Catering. (Compl. ¶ 4.1). Similarly, as well as being an owner and director of R&R Catering, Bloxton was the vice-president and secretary of R&R Catering. (Compl. ¶ 5). In addition to being owners of R&R Catering, Saldivar and Bloxton, at times, attempted to intervene to resolve plaintiffs' concerns regarding defendants' failure to pay them for all hours worked. (Compl. ¶¶ 6, 42, 43, 59).

Plaintiffs are adult residents of Virginia. (Compl. ¶ 2.1). Plaintiffs worked as food preparation workers in the "cold kitchen"—where preparation of foods that were served cold occurred—of R&R Catering in Springfield, Virginia, preparing foods to be served at events catered by R&R Catering in Northern Virginia and the District of Columbia. (Compl. ¶¶ 2.1, 15). Rivas first worked as a temporary employee for R&R Catering during December 2010. (Compl. ¶ 12). Rivas left at the end of December 2010, and then was rehired as a permanent employee around April 2011. (*Id.*). Rivas then worked for defendants from approximately April 2011 to July 17, 2015. (*Id.*). Gutierrez first worked for R&R Catering as a temporary worker during December 2012. (Compl. ¶ 13). She left at the end of December 2012 and was then rehired as a permanent employee around March 2013. (*Id.*). Gutierrez then worked for R&R Catering from March 2013 to December 4, 2015. (*Id.*). While employed by defendants,

5

plaintiffs' job duties primarily included cutting cheeses, fruits, and vegetables; preparing sandwiches and desserts; and arranging these cold foods on platters to be served at events catered by R&R Catering. (Compl. ¶ 15). At all times relevant to this action, defendants were plaintiffs' employers for purposes of the FLSA. (Compl. ¶ 80).

During their employment by defendants, plaintiffs did not have a predictable work schedule—the days and hours they worked varied substantially each week. (Compl. ¶ 17). Plaintiffs typically clocked in early in the morning, often by 6:00 a.m. (*Id.*). Plaintiffs then finished work at varying times. Additionally, they were often given a half-hour lunch period, but frequently were not able to take the half-hour off for lunch. (*Id.*). Plaintiffs' regular rate of pay was $9.00 per hour, until September 10, 2014, when their regular rate rose to $11.00 per hour. (Compl. ¶ 14). However, Rivas was not paid for hundreds of hours of work she performed from March 1, 2014 through April 30, 2014; from November 19, 2014 through January 13, 2015; and from July 1, 2015 through July 17, 2015. (Compl. ¶ 36(a)(i)). Rivas was also not paid any wages for various days and hours of work she performed outside of those periods during her employment by defendants. (*Id.*). Gutierrez was not paid for hundreds of hours of work she performed from March 7, 2014 through April 22, 2014; from November 19, 2014 through January 13, 2015; and from November 4, 2015 through December 1, 2015. (Compl. ¶ 36(a)(ii)). Gutierrez was also not paid any wages for various days and hours of work she performed outside of those periods. (*Id.*). Additionally, plaintiffs were often required to work during their half-hour lunch breaks, but were not paid for doing so. (Compl. ¶ 36(b)). Finally, defendants incorrectly calculated fractions of hours worked by plaintiffs as divisible by 100 minutes per hour, instead of 60 minutes per hour. (Compl. ¶ 36(c)). This calculation, for example, would result in a calculation of .74 hours of work for 74 minutes of work, instead of 1.23 hours of

6

work. (*Id.*). These miscalculations occurred in every pay period during plaintiffs' employment. (*Id.*). Finally, plaintiffs' work for defendants did not meet the definition of exempt work under the FLSA. (*See* Compl. ¶ 15).

Because these allegations are pled as being done willfully, plaintiffs are entitled to liquidated damages in an amount equal to those unpaid wages. (Compl. ¶¶ 83, 86).

### Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on defendants' failure to file a responsive pleading in a timely manner, the Clerk of Court has entered default against the defendants. (Docket no. 10).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure also provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

### Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Similarly, 28 U.S.C. § 1337(a) provides that "district courts shall have

original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." The FLSA itself also states that any action to recover unpaid minimum or overtime wages may be maintained "in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b). Since this action arises from a law of the United States, the FLSA, and further arises from an Act of Congress regulating commerce, this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337. The court may also exercise supplemental jurisdiction over the remaining state law claim because it arises from a common nucleus of operative fact. *See* 28 U.S.C. § 1367; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

This court also has personal jurisdiction over the defendants. As stated in the complaint, defendant R&R Catering is a Virginia corporation with its principal place of business in Springfield, Virginia. (Compl. ¶ 3.1). Defendants Saldivar and Bloxton are adult residents of Fairfax County, Virginia and Prince William County, Virginia, respectively. (Compl. ¶¶ 4.1, 5). Further, this court has personal jurisdiction over Chavez because Virginia's long-arm statute authorizes the exercise of jurisdiction and Chavez satisfies the minimum contacts test under the Due Process Clause of the Fourteenth Amendment. *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). Chavez was an executive chef of R&R catering, a Virginia corporation, and in that position, oversaw all culinary branches of the company and oversaw all deliveries and inventory for the company. (Compl. ¶ 22). Chavez also supervised and controlled the hot and cold kitchens for R&R Catering's operations. (*Id.*). Venue is also proper in this court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this district. (Compl. ¶ 4).

8

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that this court has personal jurisdiction over the defendants, and that venue is proper in this court.

## Service

Federal Rule of Civil Procedure 4(e)(1) authorizes service on an individual within a judicial district of the United States, provided that service adheres to the state law governing that practice in courts of general jurisdiction where the federal district court is located. Under Virginia law, serving an individual must first be attempted by in-person delivery of the complaint and summons. *See* Va. Code Ann. § 8.01-296(1). When serving a corporation, Federal Rule of Civil Procedure 4(h)(1) authorizes service through the manner prescribed in Rule 4(e)(1) or by delivering a copy of the summons and complaint to an officer, managing agent, general agent, or any other agent authorized by law to receive service of process.

On May 9, 2016, the Clerk of Court issued a summons addressed to Saldivar on behalf of R&R Catering and another summons addressed to Saldivar in his individual capacity. (Docket no. 3 at 1–4). Saldivar is R&R Catering's registered agent for service of process in Virginia. (Compl. at 1). Also on May 9, 2016, the Clerk of Court issued summonses addressed to Bloxton and Chavez in their individual capacities. (Docket no. 3 at 5–8). Executed affidavits of service filed with the court confirmed personal service of a copy of the summons and complaint on Saldivar on May 25, 2016. (Docket nos. 6, 7). Saldivar's status as the registered agent of R&R Catering allowed service on both defendants to be effected simultaneously. *See* Fed. R. Civ. P. 4(h)(1)(B). Executed affidavits of service filed with the court also confirmed personal service of a copy of the summons and complaint on Bloxton and Chavez on May 14, 2016 and May 18, 2016, respectively. (Docket nos. 4, 5).

9

Based on the foregoing, the undersigned magistrate judge recommends a finding that defendants were served properly with the summons and complaint.

### Grounds for Entry of Default

In accordance with Federal Rule of Civil Procedure 12(a), defendants were required to file a responsive pleading within twenty-one days after receiving service of process. No responsive pleadings have been filed and the time for doing so has expired. On June 16, 2016, plaintiffs requested an entry of default against the defendants. (Docket no. 8). On June 20, 2016, the Clerk of Court entered default against the defendants in accordance with Rule 55(a) of the Federal Rules of Civil Procedure. (Docket no. 10).

On June 23, 2016, the District Judge entered an Order directing plaintiffs to file a motion for default judgment, an accompanying memorandum, and a notice of hearing setting the motion before the undersigned magistrate judge on July 22, 2016. (Docket no. 11). On July 8, 2016, plaintiffs filed a motion for default judgment against defendants (Docket no. 12), a memorandum in support (Docket no. 13), an exhibit detailing Saldivar & Associates, Inc.'s Commonwealth of Virginia, State Corporation Commission, Annual Reports from 2010–2016 (Docket no. 13-1), a declaration of Rivas (Rivas Decl.), exhibits regarding Rivas's pay and hours worked while employed by defendants (Docket nos. 13-3, 13-4, 13-5, 13-6), a declaration of Gutierrez (Docket no. 13-7), and exhibits regarding Gutierrez's pay and hours worked while employed by defendants (Docket nos. 13-8, 13-9, 13-10). On July 9, 2016, plaintiffs filed a notice of hearing for July 22, 2016. (Docket no. 14). On July 11, 2016, the undersigned entered an order directing plaintiffs to renotice their motion for default judgment to be heard on another Friday after July 22, 2016. (Docket no. 15). On July 11, 2016, plaintiffs filed a praecipe regarding their motion for default judgment (Docket no. 16), exhibits in support of their motion for default judgement

(Docket nos. 16-1, 16-2, 16-3, 16-4, 16-5, 16-6), and a copy of Gutierrez's declaration with a handwritten signature, dated July 11, 2016 (Docket no. 16-7) ("Gutierrez Decl."). Also on July 11, 2016, plaintiffs renoticed their motion for default judgment for a hearing on August 5, 2016. (Docket no. 18). On August 2, 2016, plaintiff filed a second praecipe regarding their motion for default judgment (Docket no. 19) and an amended damages calculation for Rivas (Docket no. 19-1). Defendants were served with copies of the motion for default judgment and memorandum in support by first-class mail on July 8, 2016 (Docket no. 12 at 4; Docket no. 13 at 2) and with the second praecipe by first-class mail on August 2, 2016 (Docket no. 19 at 4). For these reasons, the undersigned magistrate judge recommends a finding that the Clerk of Court has properly entered a default as to each defendant.

### Liability and Measure of Damages

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because defendants failed to file a responsive pleading and are in default, they admit the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6).

As alleged in the complaint, defendants willfully violated certain provisions of the FLSA. (Compl. ¶¶ 81–86). Defendants were required by the FLSA to compensate each employee based on the federal minimum wage for each hour worked. *See* 29 U.S.C. § 206(a). Additionally, for each hour worked in excess of forty hours per week, the FLSA guarantees an employee overtime pay at a rate not less than one and one-half (1.5) times the employee's regular rate of pay. *See* 29 U.S.C. § 207(a). As set forth in the memorandum in support of plaintiffs' motion for default judgment and second praecipe, Rivas seeks $7,862.73 in unpaid wages and overtime compensation; Gutierrez seeks $6,744.20 in unpaid wages and overtime compensation; and each

11

plaintiff seeks an equal amount in liquidated damages. (Docket no. 13 at 17–19; Docket no. 19 at 2). In the alternative to any recovery of unpaid wages due to them under the FLSA, plaintiffs also assert a claim for breach of contract against R&R Catering under Virginia law. (Docket no. 13 at 19). The recommendations that follow focus on plaintiffs' claims of unpaid regular and overtime wages under the FLSA, for which the facts sufficient to support a finding of liability are deemed admitted, thus negating plaintiffs' request for alternative relief on their contract claim.[2] Finally, plaintiffs also seek attorney's fees and costs. (Docket no. 13 at 19).

**Counts 1 and 2: Violation of the Minimum Wage and Overtime Provisions of the FLSA**

To establish a violation of the FLSA for non-payment of the minimum wage under 29 U.S.C. § 206, a plaintiff must show that: (1) the plaintiff was employed by the defendant; (2) the plaintiff was engaged in commerce or in the production of goods for commerce; (3) the plaintiff was not compensated for all hours worked during each work week at a rate equal to or greater than the then-applicable minimum wage; and (4) none of the exemptions in 29 U.S.C. § 213 applied to the plaintiff's position. *See* 29 U.S.C. § 206.

To establish a violation of the FLSA for non-payment of overtime hours, a plaintiff must show that: (1) the plaintiff was employed by the defendant; (2) the plaintiff was engaged in commerce or in the production of goods for commerce; (3) the plaintiff worked over forty hours per work week; (4) the plaintiff was not compensated at a rate of 1.5 times her regular rate for each hour worked in excess of forty hours for each work week; and (5) none of the exemptions in 29 U.S.C. § 213 applied to the plaintiff's position. *See* 29 U.S.C. § 207.

---

[2] Moreover, as to whether plaintiffs could be simultaneously entitled to relief on the claim of breach of contract, it is well settled that a party may not recover twice for one injury. *Gen. Tel. Co. of the Nw., Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 333 (1980) ("It also goes without saying that the courts can and should preclude double recovery by an individual.").

The facts set forth in the complaint establish that Rivas first worked for R&R Catering as a temporary worker during December 2010 and ended her temporary employment at the end of that month. (Compl. ¶¶ 12, 80). Rivas was then rehired by R&R Catering and was employed by the defendants from around April 2011 through July 17, 2015. (Compl. ¶¶ 12, 80). Gutierrez also worked as a temporary employee during December 2012 and left at the end of that month. (Compl. ¶¶ 13, 80). Gutierrez was then rehired as a regular employee and was employed by the defendants from around March 2013 through December 4, 2015. (Compl. ¶¶ 13, 80). During all times relevant to this complaint, Chavez controlled the day-to-day operations of the cold kitchen at R&R Catering where plaintiffs worked; supervised plaintiffs; had the power to hire, fire, suspend, and discipline plaintiffs, including docking their pay or hours; required the plaintiffs to purchase uniforms from him; and provided necessary supplies to plaintiffs. (Compl. ¶¶ 22–28). Defendants Saldivar and Bloxton were the owners of R&R Catering during the relevant time period and, among other actions, attempted to intervene to resolve plaintiffs' concerns regarding defendants' failure to pay them for all hours worked. (Compl. ¶¶ 6, 42, 43, 59). Accordingly, at all times relevant to this action, defendants were plaintiffs' employers for purposes of the FLSA. (Compl. ¶ 80).

Plaintiffs were also employees engaged in commerce under 29 U.S.C. §§ 206 and 207. (Compl. ¶¶ 16, 80(b)). Plaintiffs routinely worked over forty hours per work week. (Compl. ¶ 36(a)(i)–(ii)). As employees, plaintiffs allege that defendants failed to compensate them for all hours worked. Specifically, Rivas was not paid for hundreds of hours of work she performed from March 1, 2014 through April 30, 2014; from November 19, 2014 through January 13, 2015; and from July 1, 2015 through July 17, 2015. (Compl. ¶ 36(a)(i)). Rivas was also not paid any wages for various days and hours of work she performed outside of those periods during her

13

employment by defendants. (*Id.*). Gutierrez was not paid for hundreds of hours of work she performed from March 7, 2014 through April 22, 2014; November 19, 2014 through January 13, 2015; and from November 4, 2015 through December 1, 2015. (Compl. ¶ 36(a)(ii)). Gutierrez was also not paid any wages for various days and hours of work she performed outside of those periods. (*Id.*). Additionally, plaintiffs were often required to work during their half-hour lunch breaks, but were not paid for doing so. (Compl. ¶ 36(b)). Finally, defendants incorrectly calculated fractions of hours worked by plaintiffs as divisible by 100 minutes per hour, instead of 60 minutes per hour, resulting in plaintiffs not being paid for all regular hours worked for those weeks in which plaintiffs received a paycheck. (Compl. ¶ 36(c)). Finally, no evidence has been produced to show that any of the exemptions listed in 29 U.S.C. § 213 apply to plaintiffs and they appear to be covered employees entitled to the protections of the FLSA. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) ("An employer bears the burden of proving that a particular employee's job falls within such an exception.").

**Rivas**

Rivas worked for the defendants from around April 2011 through July 17, 2015. (Compl. ¶ 12; Rivas Decl. ¶ 2). Rivas did not have a predictable work schedule while employed by defendants. (Compl. ¶ 17; Rivas Decl. ¶ 8). Rivas kept a daily, personal record of the start and end time of each of her workdays with defendants. (Compl. ¶ 19; Rivas Decl. ¶ 10). Rivas was supposed to receive "Employee Work Time/Off-Clock Summaries," which would show all hours of work each day as recorded by a punch clock, but often did not receive such summaries or received summaries with errors. (Compl. ¶ 32; Rivas Decl. ¶ 24). Rivas contends that she was not paid for hundreds of hours of work, both regular and overtime, during her employment by defendants. (Compl. ¶ 36(a)(i); Rivas Decl. ¶¶ 27, 28). Rivas also contends that she was often

14

required to work off-the-clock during her half-hour lunch break—approximately two days each week. (Compl. ¶ 36(b); Rivas Decl. ¶ 29). Rivas also contends that in every pay period, defendants incorrectly calculated fractions of hours worked by her as divisible by 100 minutes per hour, instead of 60 minutes per hour, resulting in her not being paid for all regular hours worked. (Compl. ¶ 36(c); Rivas Decl. ¶ 30).

Based on Rivas's Employee Work Time/Off-Clock Summaries and personal notes, Rivas contends that she worked 689.90 regular hours[3] over 23 weeks between January 2014 to July 2015 for which defendants paid her nothing. (Docket no. 19-1). Rivas also contends that she worked a total of 175.8 hours of overtime for which defendants paid her nothing over those 23 weeks. (*Id.*). Rivas has appropriately contended that she is entitled to a minimum wage of $7.25 per hour. *See* 29 U.S.C. § 206(a)(1)(C). The FLSA also requires employers to provide overtime compensation at one and one-half times the employee's normal rate of pay for every hour worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a).

Rivas alleges that she was not paid any wages for work she performed for 20 weeks between March 1, 2014 to May 6, 2014[4]; between November 19, 2014 to January 13, 2015; and between July 1, 2015 to July 17, 2015. (Compl. ¶ 36(a)(i)). Accordingly, for these weeks, Rivas's regular rate of pay would be zero. *See* 29 C.F.R. § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."). As such, Rivas is only entitled to the

---

[3] Rivas alleges that she worked 44 unpaid regular hours and 4.9 unpaid overtime hours during the week of November 19, 2014. (Docket no. 19-1). The 4 unpaid regular hours above 40 appear to be a typographical error, based upon a review of the Employee Work Time/Off-Clock Summary for that week. (*See* Docket no. 16-1 at 37). Moreover, any hours worked over forty per week would be eligible for overtime compensation.

[4] Based on Rivas's personal notes during this time period, it appears she did not receive any compensation for the *week* of April 30, 2014 through May 6, 2014, rather than not having received any compensation for only April 30, 2014. (*See* Docket no. 16-2 at 6–7).

federal minimum wage and overtime provisions thereof for those weeks during this time period that she was not paid. Rivas contends that the number of regular hours she worked during those weeks for which she did not receive any compensation is 662.80 and the number of overtime hours for which she worked during those weeks and did not receive any compensation is 163.20. (Docket no. 19-1). Accordingly, for the weeks between March 1, 2014 to May 6, 2014, November 19, 2014 to January 13, 2015; and July 1, 2015 to July 17, 2015, for which Rivas did not receive any compensation, Rivas is entitled to **$4,805.30** (662.80 x $7.25) in unpaid minimum wage compensation and **$1,774.80** (163.20 x ($7.25 x 1.5)) in unpaid overtime compensation.

Rivas also indicates that she did not receive compensation for regular and overtime hours outside of these time periods, specifically, the weeks beginning January 29, 2014, February 26, 2014, and June 18, 2014—3 weeks in total. (*See* Docket no. 19-1). For these 3 weeks, Rivas contends she was not paid for isolated days and hours. (Compl. ¶ 36(a)(i)). First, for the week of January 29, 2014, Rivas contends she was not paid for 15.2 hours of regular work and 2.3 hours of overtime work (Docket no. 19-1), meaning that she was paid for 24.8 hours of work (40 hours –15.2 hours) at her agreed upon rate of pay of $9.00 per hour, totaling $223.20 ($9.00 x 24.8 hours). However, because Rivas was paid only $223.20 for 42.3 hours of work during the January 29, 2014 work week, her regular rate of pay would not be $9.00 per hour under the FLSA as she requests, but rather $5.28 per hour (42.3 hours / $223.20)—an amount below the federally required minimum wage. *See* 29 U.S.C. § 206(a)(1)(C). Accordingly, Rivas would be entitled to the federal minimum wage and overtime provisions thereof for the January 29, 2014 through February 4, 2014 week. Thus, Rivas would be entitled to **$110.20** in regular

compensation (15.2 hours x $7.25) and **$25.01** in overtime compensation (2.3 hours x ($7.25 x 1.5)).

For the week of February 26, 2014 through March 4, 2014, Rivas contends she was not paid for 11.9 hours of regular time only. (Docket no. 19-1). Here, Rivas would be entitled to **$86.28** in compensation (11.9 x $7.25) for the regular time Rivas worked during this week, but for which she did not receive compensation.

For the week of June 18, 2014 to June 26, 2014, Rivas contends she was not paid for 10.3 hours of overtime work, but was fully paid for any regular work. She claims her regular rate of pay during this time period was $9.00 per hour, so accordingly, Rivas was paid $360 during this time period (40 hours x $9.00) for 50.3 total hours worked. Accordingly, Rivas's regular rate of pay for this week was, again, less than the federal minimum wage ($360 / 50.3 hours = $7.157 per hour). Thus, for the week of June 18, 2014 through June 26, 2014, Rivas is entitled to **$112.01** in unpaid overtime compensation (10.3 hours x (7.25 x 1.5)).

As a final matter, Rivas contends that defendants committed rounding errors in her paychecks for those weeks *she was paid*—calculating portions of hours as divisible by 100 minutes, rather than 60 minutes—that caused defendants to negligently fail to pay 0.5 hours of time per pay period. (Comp. ¶ 36(c); Docket no. 13 at 18–19). On this basis, Rivas seeks a recovery of 0.5 hours of regular time per pay period—0.25 hours of regular time per week—for the weeks she worked in the past two years before the filing of the complaint—68 weeks in total. (Docket no. 13 at 18–19). However, Rivas appears to have already calculated the amount of hours for which regular and overtime compensation are due for a number of weeks within the past two years, as described above. Indeed, Rivas has contended that defendants failed to pay her for all regular and overtime hours worked for 17 weeks in the past two years before the

complaint was filed, beginning April 2, 2014 and ending the week of July 15, 2015. (Docket no. 19-1). Accordingly, any rounding errors committed by defendants during those 17 weeks appear to be addressed by Rivas's calculations in support of her recovery for those 17 weeks. Thus, rounding errors for 51 weeks of pay appears appropriate (68 – 17), and accordingly, Rivas is entitled to **$92.44** (51 weeks x. 0.25 hours per week x $7.25 per hour) in unpaid regular wages[5] for defendants' failure to properly calculate Rivas's regular hours worked.

In sum, the total unpaid minimum and overtime wages due to Rivas is **$7,006.04** ($4,805.30 + $1,774.80 + ($110.20 + $25.01) + $86.28 + $112.01 + $92.44).

**Gutierrez**

Gutierrez worked full-time for the defendants from around March 2013 through December 4, 2015. (Compl. ¶ 13; Gutierrez Decl. ¶ 2). Gutierrez did not have a predictable work schedule while employed by defendants. (Compl. ¶ 17; Gutierrez Decl. ¶ 8). Gutierrez kept a daily, personal record of the start and end time of each of her workdays with defendants. (Compl. ¶ 19; Gutierrez Decl. ¶ 10). Gutierrez was supposed to receive "Employee Work Time/Off-Clock Summaries," which would show all hours of work each day as recorded by a punch clock, but often did not receive such summaries or received summaries with errors. (Compl. ¶ 32; Gutierrez Decl. ¶ 25). Gutierrez contends that she was not paid for hundreds of hours of work, both regular and overtime, during her employment by defendants. (Compl. ¶ 36(a)(ii); Gutierrez Decl. ¶¶ 28, 29). Gutierrez also contends that she was required to work off-the-clock during her half-hour lunch break approximately two days each week. (Compl. ¶ 36(b); Gutierrez Decl. ¶ 30). Finally, Gutierrez also contends that in every pay period, defendants incorrectly calculated fractions of hours worked by her as divisible by 100 minutes per hour,

---

[5] Rivas has presented no argument that the rounding errors are more appropriately calculated as overtime wages, and thus, the undersigned does not recommend their calculation as such.

instead of 60 minutes per hour, resulting in her not being paid for all regular hours worked. (Compl. ¶ 36(c); Gutierrez Decl. ¶ 31).

Based on Gutierrez's Employee Work Time/Off-Clock Summaries and personal notes, Gutierrez contends that she worked 570.00 regular hours from July 7, 2013 through December 2015 for which defendants paid her nothing—19 weeks in total. (Docket no. 13-10). Gutierrez also contends that she worked a total of 151.10 hours of overtime for which defendants paid her nothing during those 19 weeks. (*Id.*). Gutierrez has appropriately calculated that she is entitled to a minimum wage of $7.25 per hour. *See* 29 U.S.C. § 206(a)(1)(C). The FLSA also requires employers to provide overtime compensation at one and one-half times the employee's normal rate of pay for every hour worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a).

Gutierrez alleges that she was not paid any wages for work she performed for 18 weeks between March 7, 2014 to April 22, 2014, November 19, 2014 to January 13, 2015, and November 4, 2015 to December 1, 2015. (Compl. ¶ 36(a)(ii)). Accordingly, for those weeks, Gutierrez's regular rate of pay would be zero. *See* 29 C.F.R. § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."). As such, Gutierrez is only entitled to the federal minimum wage and overtime provisions thereof for the weeks for which Gutierrez was not paid between March 7, 2014 to April 22, 2014, November 19, 2014 to January 13, 2015, and November 4, 2015 to December 1, 2015. Gutierrez contends that the number of regular hours she worked during those 18 weeks for which she did not receive any compensation is 570.00 and the number of overtime hours for which she worked and did not receive any compensation is 144.60. (Docket no. 13-10). Accordingly, for the weeks between March 7,

2014 to April 22, 2014, November 19, 2014 to January 13, 2015, and November 4, 2015 to

December 1, 2015, for which Gutierrez did not receive any compensation, Gutierrez is entitled to

**$4,132.50** (570.00 x $7.25) in minimum wage compensation and **$1,572.53** (144.60 x ($7.25 x

1.5)) in overtime compensation.

Gutierrez also indicates that she did not receive compensation for 6.5 overtime hours she

worked during the week of July 7, 2013. (*See* Docket no. 13-10). However, it does not appear

Gutierrez has supplied any Employee Work Time/Off-Clock Summaries for this week and

Gutierrez's personal notes do not appear to show she worked 6.5 hours of overtime between July

7, 2013 and July 14, 2013; instead, it appears Gutierrez worked less than 25 hours total. (*See*

Docket no. 16-4 at 9). The undersigned asked plaintiffs' counsel at the hearing on August 5,

2016 how this calculation was completed. Based on the discussion with plaintiffs' counsel, the

undersigned does not find that Gutierrez is owed any overtime compensation for the week of

July 7, 2013 through July 14, 2013.

Finally, Gutierrez also contends that defendants committed rounding errors in her

paychecks for those weeks *she was paid*—calculating portions of hours as divisible by 100

minutes, rather than 60 minutes—that caused defendants to fail to pay 0.5 hours of time per pay

period. (Comp. ¶ 36(c); Docket no. 13 at 18–19). On this basis, Gutierrez seeks a recover of 0.5

hours of regular time per pay period—0.25 hours of regular time per week—for the weeks she

worked in the past two years before the filing of the complaint—88 weeks in total. (Docket no.

13 at 18–19). However, Gutierrez also appears to have already calculated the amount of hours

for which regular and overtime compensation are due for a number of weeks within the past two

years, as described above. Specifically, Gutierrez has contended that defendants failed to pay

her for all regular and overtime hours worked for 15 weeks in the past two years before the

20

complaint was filed, beginning April 2, 2014 through December 2015. (Docket no. 13-10). Accordingly, any rounding errors committed by defendants during those 15 weeks appear to be addressed by Gutierrez's calculations in support of her recovery above. Thus, rounding errors for 73 weeks of pay (88 − 15) appears appropriate, and accordingly, Gutierrez is entitled to **$132.31** (73 weeks x 0.25 hours per week x $7.25 per hour) in unpaid regular wages for defendants' failure to properly calculate her regular hours worked.

In sum, the total unpaid minimum and overtime wages due to Gutierrez is **$5,837.34** ($4,132.50 + $1,572.53 + $132.31).

**Liquidated Damages**

In FLSA cases, employees are routinely awarded liquidated damages equal to the amount of unpaid wages. *See* 29 U.S.C. § 216(b); *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir. 1985). However, an employer can avoid the imposition of liquidated damages upon a showing of good faith. In this case, the employers have failed to appear and present any defense to plaintiffs' claim of a willful violation of the FLSA. (Compl. ¶ 34). Accordingly, an award of liquidated damages equal to the amount of unpaid wages is appropriate.

For these reasons, the undersigned magistrate judge recommends that a default judgment be entered in favor of plaintiffs against defendants in the amounts of **$14,012.08** for Rivas (consisting of $7,006.04 in unpaid minimum and overtime wages + $7,006.04 in liquidated damages) and **$11,674.68** for Gutierrez (consisting of $5,837.34 in unpaid minimum and overtime wages + $5,837.34 in liquidated damages).

**Attorney's Fees and Costs**

The FLSA provides for the mandatory award of attorney's fees and costs of an action. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to

the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs

of the action."). Plaintiffs have requested an award of their attorney's fees and costs in this

action. (Docket no. 13 at 19). However, based on the submissions currently available, the

undersigned is without any evidence in support of plaintiffs' claim for a specific amount of

attorney's fees and cannot make a recommendation as to any such sum that should be paid by

defendants. Because the FLSA entitles the prevailing party to such an award, the undersigned

recommends that, if the District Judge enters a judgment in this matter against defendants,

plaintiffs be permitted to file and serve an affidavit stating its fees and costs along with invoices

supporting computation of the total they seek within fourteen days of the entry of default

judgment. At that time, the District Judge can review plaintiffs' request and make any award of

attorney's fees and costs that the court deems appropriate.

The undersigned is also in a similar position with respect to costs. Because no

information was submitted by the plaintiffs to support or establish the amount of costs, other than

notice of the $400 filing fee (Docket no. 1-2), the undersigned is unable to make a

recommendation as to the costs that should be awarded at this time other than the $400 filing fee.

### Conclusion

For these reasons, the undersigned magistrate judge recommends that a default judgment

be entered in favor of plaintiffs Elida Rivas and Delia Gutierrez (collectively the "plaintiffs") and

against defendants Saldivar & Associates, LLC, Robert P. Saldivar, Michelle M. Bloxton, and

Manuel Chavez, in the amount of **$400.00** for plaintiffs (costs), **$14,012.08** for Rivas (consisting

of $7,006.04 in unpaid minimum and overtime wages + $7,006.04 in liquidated damages) and

**$11,674.68** for Gutierrez (consisting of $5,837.34 in unpaid minimum and overtime wages +

$5,837.34 in liquidated damages).

22

**Notice**

By means of the court's electronic filing system, and by mailing a copy of this proposed

findings of fact and recommendations to defendants Saldivar & Associates Inc., c/o Robert P.

Saldivar, Registered Agent, 8004-A Alban Rd., Springfield, VA 22150; Robert P. Saldivar, 7956

Cameron Brown Ct., Springfield, VA 22153; Michelle Bloxton, 13188 Marina Way,

Woodbridge, VA 22191; and Manual Chavez, 13188 Marina Way, Woodbridge, VA 22191, the

parties are notified that objections to this proposed findings of fact and recommendations must

be filed within fourteen (14) days of service of this proposed findings of fact and

recommendations and a failure to file timely objections waives appellate review of the substance

of the proposed findings of fact and recommendations and waives appellate review of any

judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 5th day of August, 2016.

                                             _____/s/_____
                                             John F. Anderson
                                             United States Magistrate Judge
                                             John F. Anderson
                                             United States Magistrate Judge

Alexandria, Virginia